UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGELA HARVIN, et al.,

    Plaintiffs

v.                                Civil Action No. 02-729 JGP

THE DISTRICT OF COLUMBIA, et al.,

    Defendants

PLAINTIFF ANGELA HARVIN'S MOTION FOR APPROVAL OF
MINOR PLAINTIFF'S SETTLEMENT

    Plaintiff Angela Harvin, as parent and next best friend of her minor son, plaintiff Joseph Bennett, respectfully requests approval of the minor plaintiff's settlement. In support hereof, plaintiff Harvin states:

I.     Factual Background

    e

     involves civil rights violations that occurred on May 17, 2001 in the District of Columbia. On that date, the minor, Joseph Bennett, was a student at and was under the *in loco parentis* care of the principal of Evans Middle School and the District of Columbia. His mother, plaintiff Harvin, had been given a standard District of Columbia Public School parental consent form to sign. Signing the form gave defendants in this case permission to supervise and take her son on a field trip to the District of Columbia Jail which he was to tour with other members of his school class. By signing the form, plaintiff Harvin did not give defendants permission to subject her son to real-life, "tough-love" type penal experiences, to strip search him, or to otherwise injure her son. Nevertheless, the minor plaintiff, while on the tour, was forcibly strip searched and was otherwise injured. Defendants had not been provided with any training as to how to

1

conduct a penal-institution tour for middle school-age children or on tough-love philosophies, processes, or procedures.[1]

Some time prior to the May 17, 2001 tour, and unbeknownst to plaintiffs, defendants, including Diane Brown, determined as had occurred on other occasions, to subject the minor plaintiff and his classmates to a "tough-love"- type of jail experience by exposing them to real life jail experiences including a strip search. Thus, upon entering the jail and going through ordinary security procedures for jail visitors, such as passing through a metal detector, the minor plaintiff was placed with his classmates and others, including with one of the two school supervisors[2] and a Boys & Girls Club contract van driver for the school, in a cell in the "Receiving and Discharge" area of the jail. Shortly thereafter, the guards began yelling and screaming obscenities at the group, causing even the six-foot, mid-thirties, two-hundred-plus pound van driver to be afraid. One of the physically-huge and intimidating guards told the minor plaintiff to step out of the cell and ordered him to take off all of his clothes. The minor plaintiff, in great fear, took off most of his clothes, but he refused to take off his boxer shorts and sox, hoping that his partial disrobing would satisfy the guards. It did not. Instead, a guard picked the minor plaintiff up and threw him on a table and forcibly removed his boxer shorts for him. The guards then told the minor plaintiff to stand, lift his penis and testicles, and bend over and spread his "cheeks." Thoroughly mortified, humiliated, and terrified, the minor plaintiff complied in full view of his classmates, the school supervisor, the van driver, and inmates. As a direct and proximate result of defendants' acts, the minor plaintiff suffered, continues to suffer, and

---

[1] A potential expert who is employed at a scared-straight/tough-love facility on the East coast stated unequivocally that under no circumstances, no matter what a minor may have done, should strip or related searches ever be conducted on a youth or adolescent.
[2] The second supervisor, a woman, stepped out of the R & D area just before the strip searches took place. This suggests that she knew what was about to happen, a suggestion underscored by the fact that the male supervisor from the school approached one of the R & D guards shortly after her exit and told the guard to "give them the full treatment."

will suffer into the future anxiety, pain, rage, sleeplessness, post traumatic stress syndrome, humiliation, and other damages.

II.     Pre-suit Investigation

Prior to filing suit, plaintiffs retained Nina Kraut who timely placed the District of Columbia on notice, pursuant to Title 12-309, of their intention to file a lawsuit in regard to the May 17, 2001 incident summarized above. Ms. Kraut met and otherwise conferred with plaintiffs on numerous occasions, conducted legal research, conferred with fact and potential expert witnesses, corresponded with officials employed by defendants, and retained the hourly services of (1) an investigator/process server and (2) an attorney to assist in legal research, discovery and related tasks. Prior to filing suit on April 17, 2002, Ms. Kraut contacted the Office of the D.C. Corporation Counsel by letter to attempt to settle plaintiffs' claims without the need of filing a Complaint. That office did not respond to counsel's settlement efforts.

III.    Litigation

A Complaint for damages was filed on April 17, 2002 and service was timely effected. The following substantive pleadings and related documents have been filed to date:

a – Title 12-309, D.C. Code Notification (July 17, 2001)

b - Complaint for Damages (April 17, 2002)

c – Plaintiffs' Return of Service/District of Columbia [The Hon. Anthony Williams, Mayor] (August 14, 2002)

d – Plaintiffs' Return of Service/Robert Rigsby, D.C. Corporation Counsel (August 14, 2002)

e – Plaintiffs' Return of Service/Odie Washington, Director, D.C. Department of Corrections (August 14, 2002)

f – Plaintiffs' Return of Service/Diane Brown, Principal, Evans Middle school (August 14, 2002)

g – Plaintiffs' Return of Service/Patricia Britton-Jackson, Warden, D.C. Jail (October 23, 2002)

h – Amended Complaint for Damages (August 27, 2002)

i – Defendants District of Columbia's and Odie Washington's Answer to Amended Complaint (September 10, 2002)

j – Defendant Brown's Motion to Dismiss (September 11, 2002)

k – Defendant Britton-Jackson's Answer to Amended Complaint ( November 12, 2002)

l – Plaintiff's Memorandum in Opposition to Defendant Brown's 12(b)(6) Motion to Dismiss (November 22, 2002)

m – Joint Meet and Confer Statement (December 9, 2002)

n – Response in Opposition to Defendant District of Columbia's Motion to Consolidate [See CA No. 02-342] (September 10, 2002)

IV. Resolution

    A. Factors Considered for Resolution

In determining the value of this case, plaintiffs and plaintiffs' counsel considered the following:

1) minor plaintiff's injuries;
2) the likelihood of a verdict in favor in minor plaintiff;
3) the likelihood of a defense verdict;
4) the expenses of expert witnesses and other related trial expenses should the case proceed to trial;
5) verdicts and settlements in similar cases, both local and national;
6) the emotional impact of a trial on minor plaintiff and on his family.

The parties to the February 14, 2003 Offer of Judgment have agreed to settle plaintiffs' case for one-hundred fifty thousand dollars ($150,000.00) which includes costs and attorneys fees. Pursuant to plaintiffs' Retainer Agreement, a copy of which is attached (Exhibit #1), the attorneys fees were contingent upon a monetary award and plaintiffs were responsible for all reasonable costs. A copy of the Disbursement Sheet detailing the settlement fees and expenses is attached. (Exhibit #2). Below is a further discussion of key points in the case for the Court's consideration:

    A.  Liability and Notice

The District of Columbia contended that the minor plaintiff's parent consented to the treatment by the jail guards by virtue of her having signed the parental consent form provided by the school, and, in addition, that minor plaintiff assumed the risk of such treatment by attending the jail tour. The District of Columbia contended that the tour was essentially a "scared-straight/tough love"-type of program for problem children in order to deter such children to change their behavior and stay out of trouble. The District of Columbia further contended that the minor plaintiff was not injured. However, the District of Columbia, and, specifically, the D.C. Public School system, the D.C. Department of Corrections, and the D.C. Jail had no procedures, policies, or guidelines formulated or in place relating to, and had never trained personnel in, conducting any kind of jail tours for middle-school age children and in "scared-straight/tough love"-type programs.

    B.  Damages

The minor plaintiff was deprived by defendants of his privacy, due process and equal protection rights under the First, Fourth, Fifth and Ninth Amendment rights under the U.S. Constitution, in violation of 42 U.S.C. sec. 1983, *inter alia.* As a direct and proximate result, the minor plaintiff suffered, continues to suffer, and will suffer into the

5

future anxiety, pain, rage, sleeplessness, post traumatic stress syndrome, humiliation, and other damages.

  C. Fees and Costs

At the time the minor plaintiff, through his parent and next best friend, plaintiff Angela Harvin, retained Nina Kraut to represent them, they did so on a contingency fee basis with the proviso that if any fees and costs were paid by defendants under a 42 U.S.C. sec. 1988 application for attorneys fees, at $300 an hour, and reasonable costs, the attorneys fees and costs awarded under the contingency fee arrangement would be reduced by the 1988 amount if less than or equal to the contingency fee and costs paid.

  Specifically, the terms of the Retainer agreement are that if the matter settled prior to filing suit, the fee would be one-third (33.33%) of the gross amount of the settlement, plus costs. Otherwise, once a Complaint was filed, the fee would be 38.5% of the gross amount of the settlement or award, plus reasonable costs.[3] During the pendency of the case, plaintiffs' counsel bore all costs of the litigation. A copy of the Settlement Disbursement Sheet is attached. (Exhibit #2). The fees in this case are reasonable. *Connelly v. Shapiro*, 749 A.2d 1264 (DDC 2000)("Attorneys are to be compensated reasonably for professional services rendered in a manner where the client's obligation is understood in advance, and accepted as an objectively fair undertaking…[C]onsideration should be given to the time and labor required, the difficulty of the questions involved, the particular skills required to serve as counsel in a given case, the customary fee for similar services, the results obtained, the length and the nature of the lawyer-client relationship, as well as the experience, reputation and ability of counsel.") See also Exhibit #3, Resume of Nina Kraut and list of litigated Selected Cases.

---

[3] If fees and costs were awarded under 1988, such fees and costs would be deducted from the contingency fee percentage.

Therefore, pursuant to the contractual relationship that counsel has with plaintiffs, counsel is contractually entitled to a fee of 38.5% of the gross amount of the settlement amount, plus reimbursement for all reasonable costs.

WHEREFORE, plaintiff Harvin, as parent and next best friend of plaintiff Joseph Bennett, respectfully requests this Court to approve the Settlement reached in this action.

Respectfully submitted,

_____
Nina Kraut #348185
3815 Yuma Street, NW
Washington, DC 20016
202 745 0300
202 745 0300*51 FAX
ninakraut@aol.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March 2003 a copy of the foregoing Motion was emailed to the following: Robert deBerardinis, counsel to the District of Columbia, Odie Washington, and Patricia Britton-Jackson, at robert.deberardinis@dc.gov; and David Branch, counsel to defendant Diane Brown at dablaw@erols.com.

_____
Nina Kraut

Joseph Bennett
Angela Harvin
5703 E. Capital Street, SE
Washington, DC 20019

<u>Retainer Agreement</u>

_____ This is to confirm that Joseph Bennett, by his mother, Angela Harvin ("client") has retained Nina Kraut ("attorney") to represent the client in regard to matters pertaining to the strip search and related treatment which occurred on or about May 17, 2001 at the District of Columbia Jail by jail personnel and with complicity of D.C. Public School personnel.

Specifically, it is understood and agreed that the attorney has been retained to represent the client in all matters pertaining to the above-stated event, including but not limited to the investigation of the event, conferences with officials representing the District of Columbia, the filing of a lawsuit, and related work.

It is also understood and agreed that the lawyer's fee for services rendered shall be contingent upon the client prevailing against District officials through settlement negotiations or as a consequence of a lawsuit having been filed, and that the client shall be responsible for all costs involved, including but not limited to copying, postage, travel, filing fees, expert witness fees, whether a lawsuit is filed or whether the client prevails as a result of pre-suit negotiations.

The attorney's fee shall be calculated as follows: if settlement is reached without a lawsuit being filed, the attorney's fee shall be one-third (33.34%) of the gross amount of the settlement dollar figure. Should the District include attorneys fees with a final settlement offer, as the attorney shall press for, and if that amount is less than what one-third of the gross settlement amount would have been, it is understood and agreed that the attorney shall receive in addition to the negotiated fee the difference between that amount and the amount constituting one-third of the settlement dollar figure, dollar for dollar. By way of example only, if the District offers in settlement $60,000, without fees, the attorney shall be entitled to $20,000 of that amount as a fee, and all costs shall be paid by the client from the remaining $40,000. If however, the District offers $45,000 to the client, and $10,000 as attorneys fees, the attorney shall keep the $10,000 and shall deduct this amount from $15,000 [$15,000 is one-third of $45,000], which means the client would obtain $40,000 and the attorney would have $15,000, $5000 paid by the client, and $10,000 paid by the District. All costs, of course, would also be deducted from the client's share.

Similarly, if a lawsuit is filed, the lawyer's share shall be equal to 38.5% of the gross proceeds awarded. In other words, if the case is settled after a suit is filed, or if a jury or a judge awards the client monetary damages after trial on grounds <u>other</u> than civil rights violations, the attorney shall be entitled to 38.5% of the gross amount of the award,

and all costs, as stated above, shall be paid from the client's portion of the award. If, however, a settlement is reached or if a jury or judge makes a monetary award based on violations of the civil rights statutes, the attorney shall apply to the court for and award of fees and costs under that statute at the rate of $300 an hour. As above, if the fees awarded under this statute are less than what the fees would have been under the 38.5% formula, the attorney shall also be entitled to obtain from the gross amount of the award to the client the difference between the statutory fee awarded and the 38.5% amount, dollar for dollar. By way of example only, if the client is awarded $100,000 but <u>not</u> under the civil rights statute, the lawyer shall be entitled to $38,500 as her fee. If, however, the award of $100,000 is made under the civil rights statute, and if the lawyer applies for fees but is awarded only $23,000, the lawyer shall be entitled to the $23,000 and shall also be entitled to take the difference between the $38,500 and $23,000, which is $15,500, from the gross amount awarded to the client. Any differences in costs applied for and awarded shall also be the sole responsibility of the client.

      Further, it is understood and agreed that in the attorney's sole discretion she may engage whatever staff is needed including investigators and co-counsel, in order to represent the best interests of the client. Finally, it is understood and agreed that payment of any monetary award for the client shall be made out to the order f the attorney, that the attorney shall deposit such award in an escrow account, and that the client's award shall be disbursed, to a Trust account for the minor client, upon the payment of all fees and costs, as noted.


[signed] _____     [signed/July 17, 2001]_____
Joseph Bennett, a Minor, by his Mother,                                           Nina Kraut


[signed/July 24, 2001]_____
              Angela Harvin

FOR THE DISTRICT OF COLUMBIA

ANGELA HARVIN, et al.,

    Plaintiffs

    v.                                        Civil Action No. 02-729 JGP

THE DISTRICT OF COLUMBIA, et al.,

    Defendants

## DISBURSEMENT SHEET

| | | |
|---|---|---|
| Settlement Amount | | $150,000.00 |
|   Less 38.5 % fees | | 57,750.00 |
| | | $ 92,250.00 |
| Less costs: | | |
|   Filing fee | $150.00 | |
|   Copying | 416.31 | |
|   Postage | 30.79 | |
|   Travel | 46.10 | |
|   DCMR (DCPS – Title 5) | 20.00 | |
|   Contract attorney @$100/hour | 670.00 | |
|   Contract investigator/ @$65/hour | 962.00 | |
|   Restaurant w/witness and investgtr | 33.71 | 2328.91 |
| Net award/plaintiffs | | $ 89,921.09 |
| Net fees and reimbursed costs/attorney | | $ 60,078.91 |

| | |
|---|---|
| Mailing Address: | 3815 Yuma Street, NW |
| | Washington, DC 20016 |
| | USA |
| Telephone: | 202 745 0300 |
| Fax: | 202 745 0300*51 |
| Email: | ninakraut@aol.com |
| Citizenship: | USA |

# EMPLOYMENT

**Criminal defense and human rights litigation practice,** Washington, D.C., 1981-present.

Complex trial, appellate and United States Supreme Court criminal defense and human rights litigation practice. Responsibilities include conducting legal research, fact investigation including interviewing and deposing witnesses and conducting related investigatory tasks, analyzing statutes and cases, negotiating, identifying issues, developing strategies, drafting documents including complaints, motions and briefs, and extensive oral advocacy. Practice includes supervisory and administrative responsibilities.

**Visiting Assistant Professor of Law and Director, Civil Law Clinic, Syracuse University College of Law,** Syracuse, N.Y., 1994-95.

Directed and supervised law students representing and litigating on behalf of the clinic's indigent clients. Initiated, implemented and directed a domestic violence component of the program.

**Assistant Legal Director, American Civil Liberties Union Fund of the National Capital Area,** Washington, D.C., 1979-1980.

Supervised volunteer lawyers on complex civil liberties and human rights cases, including analyzing statutes and case law and developing strategies.

**Pre-Law Employment:**

**Research Assistant,** Carnegie Council on Children, New Haven, Conn. (Policy Study)(acknowledged in deLone, R., "Small Futures: The Limits of Liberal Reform," New York 1979).

**Co-Director,** Number Nine, Inc., New Haven, Conn. (Non-profit crisis intervention and counseling center for youth).

**Advertising Copywriter,** New York, N.Y. and New Haven, Conn.


# EDUCATION
**Masters of Law Candidate (LL.M)**(part-time)

**International Legal Studies Program, American University/Washington College of Law,** Washington, D.C.
    **Specialty:** International Humanitarian and Human Rights Law
    Relevant courses/work experience:
        International Criminal Law
        International Humanitarian Law
        Advanced International Human Rights
        International Law
        European Human Rights
        Coalition for International Justice

**Juris Doctor (J.D.),** 1978
    **Franklin Pierce Law Center**, Concord, N.H. [Selected in 1998 as one of twenty-five outstanding law school alumni]
    **Co-Founder,** Institutional Law Project
        New Hampshire Legal Assistance
        Concord, N.H.

**Bachelor of Science (B.S.),** 1966
    **New York University,** New York, N.Y.

## PUBLICATION

"Speech: A Freedom in Search of One Rule," 12 Thomas M. Cooley L. Rev. 177 (1995).

## SELECTED MEMBERSHIPS AND ACTIVITIES

**Bar Memberships:**
District of Columbia (by exam; active status)
Commonwealth of Pennsylvania (voluntary inactive status)

**Courts to which admitted to practice:**
United States Supreme Court
United States Court of Appeals for the District of Columbia Circuit
United States District Court for the District of Columbia
United States Court of Appeals for the Third Circuit
United States District Court of Pennsylvania (E.D.)
United States District Court of Maryland

**Member, Criminal Code Advisory Working Groups,** Central and Eastern European Law Initiative (ABA), Mongolia and Azerbaijan
**Member, Law Advisory Committee,** Anti-Defamation League
**Member, Board of Directors,** Fillmore Arts Workshop [privately-funded community arts program for District of Columbia elementary public school students]
**Steering Committee, Section on Criminal Law and Individual Rights,** District of Columbia Bar
**Board of Governors,** District of Columbia Superior Court Trial Lawyers Association
**Miscellaneous Information:**    Resided in Bucharest, Romania 1991-92
        Mother tongue: English
        Working knowledge: French

## SELECTED CASES

**Counsel of Record**

**Harvin v. District of Columbia, et al.**, No. 02-279 (D.D.C. 2002)(pending)(human rights suit challenging on constitutional and common law grounds the strip searching of a middle school-age boy by jail officials, with the complicity of school officials, while he was on a public school "field trip" to the city jail).

**Siegert v. Gilley**, 111 S.Ct. 1789 (1991)(within the context of a human rights suit where qualified immunity was raised as a defense in a summary judgment motion, this was a substantive due process challenge to a heightened pre-discovery pleading standard for the element of malice).

**United States v. Crawford**, 738 F. Supp. 564 (D.D.C. 1990) and No. 90-3102 (unreported)(D.C. Cir. June 6, 1990)(established the rule that criminal defendants have a right to bond and preliminary hearings prior to mental competency determinations).

**Mokhiber et al. v. Boorstin**, No. 86-1160 (unreported)(D.D.C. April 1986)(defended protestors in a criminal prosecution and obtained injunctions of an order banning protected free speech demonstrators from using the United States Library of Congress; challenge to order was based on procedural due process).

Co-Counsel of Record

**United States v. Bonowitz, et al.**, 741 A.2d 18 (D.C. App. 1999), cert. denied, __ U.S. __ (2000)(defended anti-death penalty protestors in a criminal prosecution in which free speech and assembly challenges were made to Supreme Court regulations which banned demonstrators from assembling, as the press was able to do, on the grounds of the Court)(**lead counsel**).

**United States v. Eichman, et al.**, 496 U.S. 310 (1990)(defended protestors in a criminal prosecution in which a successful First Amendment challenge was made to a federal statute which criminalized the burning of the American flag).

**United States v. Edmonds, et al.**, Cr. No. 89-162/01 et al. (D.D.C.1989) and (D.C. Cir. 1989)(represented a defendant in a highly publicized, multi-defendant drug and homicide prosecution involving a lengthy and complex jury trial and expedited and emergency appeals, and where tangential issues of jury anonymity and sequestration, courtroom security, public trials and freedom of the press, *inter alia,* were raised).

**Morgan, et al. v. Barry, et al.**, No. 81-1419 (unreported)(D.D.C. June 1981)(successful equal protection and due process challenge to the District of Columbia's practice of strip searching female but not male arrestees; temporary and permanent injunction obtained)(**lead counsel)**.

**Novosel v. Helgemoe**, 384 A.2d 124 (N.H. Sup. 1978)(successful constitutional challenge to New Hampshire's criminal-insanity statutory scheme)(student intern/argued the case in the New Hampshire Supreme Court).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGELA HARVIN, et al.,

Plaintiffs

v.                                                          Civil Action No. 02-729

THE DISTRICT OF COLUMBIA, et al.,

Defendants

## ORDER

Upon consideration of Plaintiff Angela Harvin's Motion for Approval of Minor Plaintiff's Settlement, and the entire record herein, it is by the court on this _____ day of _____ 2002

ORDERED that Plaintiff Angela Harvin's Motion for Approval of Minor Plaintiff's Settlement be and hereby is granted; and it is further

ORDERED the the settlement reached in this matter between the parties hereto and described in Plaintiff Angela Harman's motion be and hereby is approved; and it is further

ORDERED the the settlement award shall be disbursed as follows:

_____ .

_____
UNITED STATES DISTRICT COURT JUDGE

Copies to:

Nina Kraut
3815 Yuma Street, NW
Washington, DC 20016
202 745 0300
202 745 0300*51 FAX
ninakraut@aol.com

Robert deBarardinis
Assistant DC Corp. Counsel
PO Box 14600
Washington, DC 20044-4600

David Branch
2000 Massachusetts Avenue, NW
Washington, DC 20036